**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CHARLEY TOPPINO AND SONS, INC.,**
Respondent.

No. 20522.

United States Court of Appeals
Fifth Circuit.

March 24, 1966.

James McConnell Harkless, Paul M. Thompson, Attys., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, NLRB, Washington, D. C., for petitioner.

Robert J. Berghel and Fisher & Phillips, Atlanta, Ga., for respondent.

Before GEWIN and BELL, Circuit Judges, and HUGHES, District Judge.

HUGHES, District Judge.

This case is before the Court on a motion of the National Labor Relations Board for enforcement of its supplemental decree issued upon the remand of its original petition to enforce.

The initial order of the Board [1] found that Charley Toppino and Sons, Inc., committed an unfair labor practice in discriminatorily discharging several employees for union activities. On June 11, 1964, this Court entered its decree [2] which, *inter alia*, directed respondent to offer employees Sam Cagnina, Raymond Beiro, and Leroy Jordan immediate and full reinstatement to their former or substantially equivalent positions and to make them whole for any loss of pay they may have suffered by reason of the discrimination against them.

On remand, a back pay hearing was held and on January 14, 1965, the Trial Examiner issued his Supplemental Decision. On April 13, 1965, the National Labor Relations Board issued its Supplemental Decision and Order [3] adopting with slight modification, not material to this proceeding, the opinion of the Trial Examiner. A further clarifying order was issued on May 27, 1965. The Board directed the respondent, Charley Toppino and Sons, Inc., to pay to Sam Cagnina the sum of $6,564.81; Raymond Beiro, $1881.06; and Leroy Jordan the sum of $6,452.81 plus interest at the rate of 6 per cent per annum, less any lawfully required tax withholding. The Board has moved for entry of a supplemental decree enforcing its decision.

1. 138 NLRB 1247 (1962)

2. 332 F.2d 85 (5th Cir. 1964)

3. 151 NLRB No. 153 (April 13, 1965)

Respondent contends in this Court (1) that the amounts awarded each employee are erroneous for the reason that these employees were not needed after November 14, 1961, due to a decline in respondent's block business and would have been laid off for lack of work, and (2) that the method of determining back pay to the claimants was erroneous.

■■ The principal question presented is whether substantial evidence in the record as a whole supports the Board's findings. Labor Management Relations Act Sec. 10(e), 61 Stat. 148 (1947), as amended, 29 U.S.C. Sec. 160(e); see Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We are convinced that all of the Board's findings are so supported.

The respondent, having its principal place of business on Stock Island, Florida, has been engaging in a number of business enterprises and operations, including: (1) the manufacture and sale of concrete blocks, crushed stone, ready-mix concrete, and rock fill; (2) a land development operation, employing crane operators, bull dozer operators, and drag line operators; (3) a maintenance department, employing mechanics and helpers; (4) a batching plant; (5) a portable plant; (6) building construction contracting operations; (7) the furnishing of building supplies and materials for construction of bridges and highways; and (8) a rock mining operation.

At the time of their unlawful discharge, the three employees were working in the cement block plant, Beiro and Cagnina as block strippers and Jordan as a forklift operator.

The evidence shows a decline in the output of the block plant operation in November 1961. For this reason respondent contends that there was no further need for the employment of the discriminatorily discharged employees and that back pay should be calculated only to that date.

■ Respondent has the burden of proving that discharged employees entitled to back pay would necessarily have been laid off for purely economic reasons wholly unrelated to their union activity.[4] This burden has not been met.

■ The fact that there was a decline in the block plant operation does not necessarily establish less total production for the entire company. As a matter of fact the number of men in the company's employ did not decrease in 1961—the estimated number being 80 to 85 in 1960, 85 to 95 in 1961, 80 to 85 in 1962, 90 to 95 in 1963, and about 95 in 1964. The record further shows that during the back pay period additional employees for the block plant were hired and men from other departments having less seniority than the discriminatees were transferred to perform block stripping.

The shifting of employees from one department to another was common in respondent's operations and it was customary for employees to be used in other departments when work in one department was slack. As a matter of fact during Beiro's employment he worked as a ready mix driver, truck driver, crane operator and in the block plant, where he had been assigned for only the month prior to his unlawful discharge.

Cagnina, whose latest date of hire was September 19, 1960, had worked as a forklift operator in the cement block plant and on an outside construction project as a dispatcher, as acting foreman of the cement block plant, and for two weeks prior to his unlawful discharge as a block stripper.

The mere fact that on November 14, 1961, respondent may not have had as many employees in the block plant as previously does not establish that economically motivated discharges unrelated

4. NLRB v. Biscayne Television Corp., 337 F.2d 267, 268 (5th Cir. 1964); NLRB v. Mastro Plastics Corp., 354 F.2d 170, 175–176 (2d Cir. 1965); Nabors v. NLRB, 323 F.2d 686, 690 (5th Cir. 1963), cert. denied, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609 (1964); NLRB v. Ellis & Watts Products, Inc., 344 F.2d 67, 69 (6th Cir. 1965).

to union activity would have occurred during the back pay period. In fact, the diversification of respondent's enterprise, the types of jobs available, the large number of employees, the degree of interchangeability in the work force, the hiring of new employees for stripping following the discharge of the discriminatees refute respondent's contention that equivalent job opportunities were unavailable to Beiro and Cagnina during the back pay period after November 14, 1961. The Board properly rejected the respondent's argument that back pay for Beiro and Cagnina should terminate on November 14, 1961.

With reference to Jordan, the evidence is even clearer that there was no justification for termination of his back pay period on November 14, 1961. During the entire period a forklift operator was employed in the block plant. Moreover, since Jordan had greater seniority than his replacement at the time of his discharge, the respondent's claim that Jordan, rather than the replacement, would have been laid off is mere speculation and does not satisfy the employer's burden of proving that no job was available to Jordan.[5]

■ The respondent next complains of the formulas used to determine the back pay. Our task on this question is merely one of determining whether the Board's formulas were reasonably calculated to arrive at the closest approximation to the likely earnings of the employees during the back pay period had they not been discharged. If the Board was not arbitrary in the selection of a formula, its choice may not be rejected.[6]

■ In arriving at the amount due Jordan the earnings of the employee who replaced him in the block plant were used as the measure. This is the "representative employee earnings" formula commonly applied in this sort of case. Clearly the employee who replaced Jordan was the most logical representative employee for such calculations.

■ In the case of Beiro and Cagnina the "projection of average earnings" formula was used by projecting the average weekly prediscrimination wage of each discharged employee during a continuous period of employment exceeding six months immediately before his unlawful discharge. The Board selected this formula because of the difficulty in finding precise counterpart employees to the discriminatees, each of whom had been utilized in various capacities in the operation of respondent.

We find the formulas used by the Board for determining back pay not unreasonable or arbitrary.

■ Since offsets in the amount of interim earnings accruing to the discriminatees were taken into consideration in determining the net back pay due, the amounts found by the Board under the circumstance appear to be reasonable, fair and proper.

It is therefore the opinion of this Court that a supplemental decree should issue enforcing the Board's supplemental order in full.

Enforced.

---

5. See NLRB v. Hill & Hill Truck Lines, Inc., 266 F.2d 883, 887 (5th Cir. 1959); cf. Barberton Plastics Products, Inc., 146 NLRB 393, 394 (1964).

6. NLRB v. East Texas Steel Castings Co., 255 F.2d 284 (5th Cir. 1958), decree clarified, 281 F.2d 686 (5th Cir. 1960); NLRB v. Ellis & Watts Products, Inc., supra, 344 F.2d at 69 (6th Cir. 1965); NLRB v. Brown & Root, Inc., 311 F. 2d 447, 452 (8th Cir. 1963).