[Civ. No. 18253. Third Dist. Aug. 13, 1979.]

BUTTE VIEW FARMS, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

964

COUNSEL

Purtell, Hoppin & Callaway and Richard P. Hoppin for Petitioner.

Marvin J. Brenner, and Gary Williams for Respondent.

Jerome Cohen, Sanford N. Nathan, Tom Dalzell, Ellen Greenstone, E. Michael Heumann, George C. Lazar, Dianne Lyons, James M. Rutkowski, Kirsten L. Zerger and Linton Joaquin for Real Party in Interest.

OPINION

**REYNOSO, J.**—By writ of review petitioner Butte View Farms asks us to vacate and set aside a supplemental decision and order of the respondent Agricultural Labor Relations Board of the State of California. The supplemental decision and order set the amount of back pay and consequential damages due from petitioner to certain employees found to have been wrongfully discharged in an earlier board decision. The prior decision of the board is not before us in this proceeding.

Petitioner raises three back wage issues. The board, according to petitioner, used an erroneous formula in determining the amount of the wages due the discharged workers who had been tomato sorters for the periods in question. In addition, petitioner challenges the length of the period for which Gurvinder Dhaliwal was awarded back pay. Finally, the back pay period for Bertha, Manuel and Raul Avila is challenged on the basis that they returned to school after they were fired. Aside from the back wage contentions, petitioner challenges the denial of its request for enforcement of a subpoena duces tecum against the Employment Development Department. We are unpersuaded by petitioner's arguments and accordingly discharge the writ.

The United Farm Workers of America, AFL-CIO, brought charges against petitioner alleging that certain employees had been wrongfully dismissed due to their union activities or beliefs. The board decision found that petitioner had wrongfully discharged seven employees for prounion sympathies. Petitioner was ordered to offer to those employees full reinstatement to their former positions without prejudice to their seniority or other employee rights, and to pay their lost wages with,

interest at 7 percent. Review of that decision was not sought and it became final. (Lab. Code, § 1160.8.)

Subsequent to the decision of the board the regional director of the Sacramento regional office of the board issued back pay specifications and a notice of hearing. The pay specification set the length of period for payment of back pay and the amounts due each of the discharged employees. Petitioner filed an objection to the calculations. A formal hearing was held. The administrative law officer issued a decision which differed in certain respects from the back pay specifications. The parties were allowed time in which to state exceptions to the decision after it was transferred to the board for final action. Petitioner, the general counsel, and the charging party each filed exceptions to the decision.

The board issued a supplemental decision and order, the subject of this proceeding, which determined the period for which back pay should be paid, the proper formula to be used in calculating back pay, and the incidental damages to be recovered. ██ ██ In turn, petitioner filed a timely petition for a writ of review. (See Lab. Code, § 1160.8.)[1]

### 1. *The Formula for Back Pay for Tomato Sorters.*

Petitioner's records for the period in question were kept on a weekly basis; accordingly, it was not possible to determine the wages paid tomato sorters on a daily basis. In determining the amount of back pay due tomato sorters the compliance officer thus made his calculations on a weekly basis. The back pay specifications erroneously stated that the wages for the tomato sorters were established as the average earnings of the top four or five workers in each payroll period. In fact, in determining the amount of back pay the officer looked at the individual weekly pay figure of the petitioner's employees and chose a representative figure.

In his decision, the administrative law officer found that the number of

---

[1]As the party seeking review of a decision of the board the petitioner, in its petition for writ of review and the supporting points and authorities, has the burden of establishing error in those proceedings, as in cases on appeal from a trial court judgment. That burden is not met by inviting the reviewing court to search the record for support of its position. (See *Kleist* v. *City of Glendale* (1976) 56 Cal.App.3d 770, 778 [128 Cal.Rptr. 781].) California Rules of Court, rule 15(a), made applicable to original proceedings by virtue of rule 56, requires appropriate reference to the record. Petitioner's failure to cite to the record in support of its contentions could well be taken as a waiver of those contentions. (See *Schulz* v. *Wulfing* (1967) 251 Cal.App.2d 776, 779 [60 Cal.Rptr. 53]; *Haynes* v. *Gwynn* (1967) 248 Cal.App.2d 149, 151 [56 Cal.Rptr. 82].)

 .

hours worked each week was based upon the amount of work available to a given crew and would vary. He further found that the use of the top earners could result in a windfall since any single employee would probably not earn top wages each week. He then determined that the appropriate formula would be the average of the earnings of the full-time employees during each weekly pay period. In determining which were the full-time sorters he eliminated those employees who did not work at least 48 hours in any given week, since full-time employees usually worked at least that many hours per week. The board found that the administrative law officer's formula was a just and reasonable method of computing the back pay due.

Petitioner objects to the formula used to establish the back pay due, contending that it was arbitrary, and that the exclusion of those workers who worked fewer than 48 hours per week resulted in an excessive award. The proper method, according to petitioner, would have been to average all of the tomato sorters' wages for each week.

■ The California Agricultural Labor Relations Act is closely modeled on the National Labor Relations Act (29 U.S.C. §§ 151-168), and it is presumed that judicial decisions interpreting that act are applicable to the California act. (*Belridge Farms* v. *Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 556-557 [147 Cal.Rptr. 165, 580 P.2d 665]; *Nishikawa Farms, Inc.* v. *Mahony* (1977) 66 Cal.App.3d 781, 786-787 [136 Cal.Rptr. 233].) The United States Supreme Court has held that the National Labor Relations Board has broad discretion in fashioning remedies, subject to limited judicial review. (*Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203, 216 [13 L.Ed.2d 233, 241, 85 S.Ct. 398, 6 A.L.R.3d 1130].) An order of the board will not be disturbed by the courts unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the act. (*Ibid.*; *Labor Board* v. *Seven-Up Co.* (1953) 344 U.S. 344, 346-347 [97 L.Ed. 377, 381-382, 73 S.Ct. 287].)

■ "In framing a remedy, the Board has wide discretion, subject to limited judicial scrutiny. We can reverse only if we find that the method chosen was so irrational as to amount to an abuse of discretion, . . . [¶] A back pay award is only an approximation, necessitated by the employer's wrongful conduct. In any case, there may be several equally valid methods of computation, each yielding a somewhat different result. . . .

The fact that the Board necessarily chose to proceed by one method rather than another hardly makes out a case of abuse of discretion." (*Bagel Bakers Council of Greater N. Y.* v. *N.L.R.B.* (2d Cir. 1977) 555 F.2d 304, 305. (In accord see *National Labor Relations Board* v. *Carpenters Union, Local 180* (9th Cir. 1970) 433 F.2d 934, 935; *N.L.R.B.* v. *Brown & Root, Inc.* (8th Cir. 1963) 311 F.2d 447, 452.))

We have reviewed the formula used by the board. Charles Nakatani, one of the owners of petitioner, testified at the hearing. Tomato sorters usually work five or six days a week and usually eight to ten hours a day. In any given pay period petitioner would have some employees that would begin work in the middle or at the end of the period, and other employees that would leave prior to the close of the period. The formula devised by the administrative law officer and adopted by the board excluded the employees whose wages were below those who worked the entire pay period. There was no indication that any of the fired employees would have been available for less than the full work schedule. The formula used was thus, under the circumstances, a reasonable means of approximating the lost wages of the discharged workers.

Petitioner suggests that the proper formula would be simply to divide the gross salary of the tomato sorters during each pay period by the number of sorters employed. Such a formula would include the workers who started late in the pay period as well as those who quit prior to the end of the pay period. Manifestly, those workers would have lower wages for the pay period than those who were available for employment for the entire pay period; the inclusion of those workers in the average would thus result in a lower average. Since the discharged employees presumably would have been available for full employment during the pay periods in question, the method used by the board was reasonable in that it excluded those workers whose circumstances differed from those of the employees ordered reinstated.[2]

---

[2]We cite an example. For the pay period which ended on September 16, 1975, wages were paid to 113 tomato sorters. Of the 113 sorters, 80 worked in excess of 48 hours. The average hours of those working over 48 hours was more than 58 hours. Of the employees that worked fewer than 48 hours, there were some that worked as few as 4 hours. The board was justified in attempting to exclude from consideration those that started late in the pay period or those that quit early or stayed only briefly. The inclusion of those workers would improperly result in a lower average wage since there was no evidence that the discriminatees would have quit early.

## 2. *The Back Pay Award to Gurvinder Dhaliwal.*

When an employee has been improperly discharged, the National Labor Relations Board has developed the practice of identifying a "representative employee" as one who was in the same circumstances as the fired employee, but who remained on the job. The losses to the discharged employee are then measured by what happens to the still-employed representative. In determining the amount of the award to Dhaliwal, the board adopted the administrative law officer's decision to use such a "representative employee," Satpal Deol. Deol had remained employed by petitioner past the date of the tomato harvest and earned a higher wage than the tomato sorters, since he was a tractor driver/irrigator. Deol had begun work for petitioner after Dhaliwal, and it was Dhaliwal who first took Deol to petitioner. Dhaliwal began working for petitioner as an irrigator and then became a tractor driver during the harvest season. Deol also began work as an irrigator and later became a tractor driver during the harvest. Dhaliwal began driving a tractor three or four days before Deol. After Dhaliwal was discharged and the tomato harvest ended, Deol was continued in his employment as the driver of a larger tractor. Neither Deol nor Dhaliwal had previous experience in driving the larger tractor; Deol required some training prior to taking up those duties. ■ The administrative law officer determined that Deol was a "representative employee" for the purpose of determining Dhaliwal's back wages. Petitioner objects, arguing that the evidence does not support the conclusion that Dhaliwal would have been given the job driving the larger tractor at the conclusion of the harvest season.

The situation is not novel. In *Golden State Bottling Co.* v. *NLRB* (1973) 414 U.S. 168 [38 L.Ed.2d 388, 94 S.Ct. 414], the National Labor Relations Board determined that a driver-salesman would have been converted to a distributor had he not been wrongfully discharged and based his award of back pay upon the distributor classification. The United States Supreme Court upheld the award noting that an order requiring reinstatement and back pay is aimed at restoring the economic status quo that would have obtained but for the wrongful action of the company. (414 U.S. at pp. 187-188 [38 L.Ed.2d at pp. 404-405].) Similarly the United States Court of Appeals, Fifth Circuit, upheld an award of the National Labor Relations Board determining back pay upon the basis of a promotion the board found would have occurred absent wrongful termination. (*National Labor Relations Board* v. *Mooney Aircraft, Inc.* (5th Cir. 1967) 375 F.2d 402, 403.) The court noted that there was substantial evidence in support

of the board's determination. (*Ibid.*; see also *N.L.R.B.* v. *Charley Toppino and Sons, Inc.* (5th Cir. 1966) 358 F.2d 94, 96-97.)

We have mentioned that the board has wide discretion in fashioning remedies under the Agricultural Labor Relations Act and that a decision of the board will be interfered with only where an abuse of discretion appears. We find no abuse of discretion in the determination that Deol was a proper representative employee to compare with Dhaliwal in determining the amount of lost wages. The evidence supports the inference that but for the wrongful termination of Dhaliwal's employment he would have been given the job on the larger tractor after the harvest, thus securing employment for a period beyond the harvest and at a higher rate of pay. His duties were in all respects similar to Deol's, and he had been an employee for a longer period of time. Dhaliwal began driving a tractor prior to the time Deol was moved to a similar position. Deol's experience with tractors was no greater than Dhaliwal's. No evidence was introduced to show that Dhaliwal was a less satisfactory employee than Deol. The evidence supports the Board's use of the records of Deol as a basis for determining the amount of lost wages caused to Dhaliwal due to his wrongful termination.

3. *The Back Pay Period for the Avilas.*

The board found that Bertha, Raul and Manuel Avila should be paid back pay from their wrongful discharge, from September 11, 1975, to September 23, 1975. The administrative law officer found that although the Avilas would have returned to school prior to the close of the harvest on October 8, 1975, they would have remained in petitioner's employ past the start of school, until September 23, 1975. The board adopted the findings of the administrative law officer.

Petitioner argues that since they returned to school they were not entitled to back pay. Petitioner's contention, as did the previously discussed contentions, resolves into a question of the sufficiency of the evidence. The evidence established that after the Avilas were terminated from petitioner's employment they sought work for the remainder of the season, but were unable to find it. When they were unable to find work they returned to school. It was the usual practice of the Avilas to stay with the harvest crews until two weeks after the beginning of school. Prior to their discharge they had informed petitioner that they would stay for an additional two weeks after the beginning of school. The schools allowed

them to start late due to their employment in the harvest, and arrangements for this had been made. After they returned to school they still sought work on the weekends. We find substantial evidence to support the board's finding that the Avilas would have remained with the harvest after the beginning of school and would have taken other employment had it been available. The computation of back pay to include that period was reasonable and not an abuse of discretion.

4. *The Subpoena Duces Tecum.*

At some time prior to the hearing before the administrative law officer, petitioner served a subpoena duces tecum upon the State of California Employment Development Department (hereinafter Department), seeking "all documents and records regarding employment" acquired by the Department in connection with the discriminatees' claims for unemployment insurance benefits and employment services activities. The Department filed a petition to revoke the subpoena on the basis that the information sought was confidential, privileged, not admissible in evidence in the proceedings, and that the subpoena was therefore invalid on its face. The administrative law officer subsequently issued an order revoking the petition and refusing petitioner's request for enforcement.

In its exceptions to the supplemental decision of the administrative law officer, petitioner did not except to the revocation of the subpoena. The board therefore did not consider the issue now raised by petitioner. In order to properly raise a matter before the board a party must file an exception to the administrative law officer's decision in the matter within 20 days after service of the proposed decision. (Lab. Code, § 1160.3.) Petitioner's failure to present the issue to the board precludes judicial review since petitioner failed thereby to exhaust its administrative remedies. (*Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476-477 [131 Cal.Rptr. 90, 551 P.2d 410]; *Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 432 [95 Cal.Rptr. 860].)

The decision of the Agricultural Labor Relations Board is affirmed.

Puglia, P. J., and Paras, J., concurred.