Filed 6/24/21; Certified for Publication 7/16/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| WESTERN BAGEL COMPANY, INC., <br><br>     Petitioner, <br><br>     v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br>     Respondent; <br><br> JOSE CALDERON, <br><br>     Real Party in Interest. | B305625 <br><br> (Los Angeles County Super. Ct. No. 19STCV22699) |

    ORIGINAL PROCEEDING; petition for writ of mandate. Kenneth R. Freeman, Judge.  Petition granted.

    Lewis Brisbois Bisgaard & Smith, Brittany B. Sutton, Tracy D. Forbath, and Katherine E. Akamine for Petitioner.

    No appearance for Respondent.

    Bitton & Associates and Ophir J. Bitton for Real Party in Interest.

———————————————

At all relevant times, real party in interest Jose Calderon (Calderon), a Spanish-speaker who can read and write only basic English, was employed by petitioner Western Bagel Company, Inc. (Western Bagel) at one of its retail stores. Calderon commenced a putative class action against Western Bagel for allegedly failing to provide its employees with legally compliant meal and rest breaks. Western Bagel moved to compel arbitration, arguing that Calderon had executed an arbitration agreement that required him to resolve disputes arising out of his employment through binding arbitration. As the parties briefed the motion, it became apparent that the severability clause in the Spanish version of the arbitration agreement Calderon signed indicates the parties agreed to nonbinding arbitration, whereas the severability clause in the original English version of that document suggests the parties consented to binding arbitration. Western Bagel attributed the discrepancy to a typographical error that a third-party company had made when it translated the English version of the document to Spanish. Other provisions in both the English and Spanish versions of the agreement, however, either state explicitly, or strongly support the conclusion, that the agreement calls for binding arbitration.

The trial court found that the Federal Arbitration Act (FAA) governs the parties' arbitration agreement, concluded that the inconsistency between the Spanish and English severability clauses creates an ambiguity regarding whether the parties consented to binding or nonbinding arbitration, resolved this ambiguity against Western Bagel pursuant to the constructive canon of contra proferentem (whereby an ambiguity in a contract

2

is construed against the drafter thereof),[1] and ordered the parties to arbitrate their dispute on a nonbinding basis.

Although it is unclear whether Western Bagel has sought review of an appealable order, we need not reach that issue because we exercise our discretion to construe Western Bagel's appeal as a petition for writ of mandate. Upon reaching the merits of Western Bagel's writ petition, we conclude the FAA preempted the trial court's use of contra proferentem. Next, assuming arguendo there is an ambiguity regarding whether the parties consented to binding or nonbinding arbitration, we employ the FAA's default rule that any ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration as envisioned by the FAA, a fundamental attribute of which is a binding arbitral proceeding. We thus grant Western Bagel's petition and direct the trial court to enter a new order compelling the parties to arbitrate their dispute via binding arbitration in accordance with the terms of their arbitration agreement.

---

[1] (*DVD Copy Control Assn., Inc. v. Kaleidescape, Inc.* (2009) 176 Cal.App.4th 697, 716, citing, inter alia, Civ. Code, § 1654 ["In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."].)

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only the facts relevant to this review proceeding.

### 1. The Relationship of the Parties, Calderon's Execution of the Spanish Version of the Arbitration Agreement, and Relevant Provisions of the English and Spanish Versions of the Document

Western Bagel is a nationwide seller of bagels that has retail locations in California. Since 1985, Calderon has worked for Western Bagel as a retail store employee. Western Bagel considers Calderon to be a "Spanish-only speaking employee," and Calderon claims that he "speak[s] broken English" and "can read and write very basic English but . . . need[s] a Spanish/English translator for letters and contracts."

On December 13, 2018, Western Bagel provided Calderon with a document, written in Spanish, that was titled, "Acuerdo Mutuo Para Arbitraje De Reclamación," which, translated into English, means: "Mutual Agreement to Arbitrate Claims" (MAAC). (Boldface, underscoring, & some capitalization omitted.) Western Bagel drafted the MAAC originally in English,

---

[2] Our factual and procedural background is derived in part from undisputed aspects of the trial court's order and the parties' filings. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party. [Citations.]' [Citations.]"].)

and it later hired a third-party company to translate the MAAC into the Spanish language version of the document that Western Bagel supplied to Calderon.[3]

Calderon signed the Spanish MAAC on December 3, 2018, as did Western Bagel's representative, Steve Ustin. The parties dispute, inter alia, whether: Calderon had the opportunity to ask a Spanish-speaking employee questions concerning the MAAC; Western Bagel required Calderon to sign and return the document within a specific timeframe; and Western Bagel provided Calderon with a copy of the Judicial Arbitration and Mediation Services, Inc. (JAMS) rules referenced in the MAAC. Western Bagel did not provide Calderon with the English MAAC.[4]

---

[3] We refer to the English-language version of the MAAC as the "English MAAC," and to the Spanish-language document provided to Calderon as the "Spanish MAAC." In discussing the Spanish MAAC, we rely upon the English translation thereof that Western Bagel submitted to the trial court, the accuracy of which neither party disputes. Further, apart from the severability provision in paragraph 10 of the MAAC and the disclaimer included in the Spanish MAAC (both of which are discussed in more detail later in this part), the parties do not argue there is any material difference between the English MAAC and the Spanish MAAC. Unless otherwise specified, this opinion relies upon the English translation of the Spanish MAAC when discussing the MAAC's terms.

[4] In its opening brief, Western Bagel suggests (but does not specifically allege) that it supplied both the English MAAC and the Spanish MAAC to Calderon. Specifically, Western Bagel states: "On December 13, 2018, Western Bagel gave its employees, including Calderon, . . . the Mutual Agreement to Arbitrate Claims ('arbitration agreement') . . . . Western Bagel

Paragraph 1 of the Spanish MAAC provides in pertinent part: "To the maximum extent permitted by law, [Western Bagel] and I mutually agree to resolution through binding arbitration for all claims or causes of action . . . that [Western Bagel] may bring against me or that I may bring against [Western Bagel] . . . ." In addition, paragraph 1 states that "[c]laims covered by this Agreement include, [inter alia], . . . any claim arising under . . . state and local anti-discrimination laws, fair employment laws and labor laws, including but not limited to . . . the California Labor Code."

Even though paragraph 1 states that Calderon and Western Bagel agreed to have their disputes resolved through binding arbitration, the severability provision in paragraph 10 of the Spanish MAAC states in relevant part: "If any provision of this Agreement, apart from paragraph 4,[5] is found to be

_also_ gave Calderon copies of the arbitration agreement and JAMS rules that were translated into Spanish since Calderon is a Spanish-speaking employee." (Italics added.) Yet, the excerpts of the record Western Bagel cites to support these assertions do not show Western Bagel supplied the English MAAC to Calderon on that date. Additionally, Calderon asserts in his respondent's brief that Western Bagel did not give him the English MAAC on December 13, 2018, and Western Bagel does not contest that point in its reply. Western Bagel thus impliedly concedes that it gave Calderon only the Spanish version of the MAAC on that date. (See _Rudick v. State Bd. of Optometry_ (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point."].)

[5] Paragraph 4 of the Spanish MAAC provides: "I understand that by signing this Agreement, [Western Bagel] and I waive the right to participate in a class action lawsuit or legal

6

unenforceable, whether in whole or in part, this finding will not affect the validity of the rest of this Agreement and the Agreement will be carried out to the fullest possible extent to ensure that the resolution of all disputes between the parties as described herein are resolved via neutral, *non-binding* arbitration."  (Italics added.)

In contrast, paragraph 10 of the English MAAC provides that if any part of the agreement other than paragraph 4 is found to be unenforceable, "this Agreement shall be reformed to the greatest extent possible to ensure that the resolution of all conflicts between the parties as described herein are resolved by neutral, *binding* arbitration."  (Italics added.)  Western Bagel claims that this discrepancy between the Spanish and the English versions is attributed to a "*typographical error*" made by the third-party translator when it prepared the Spanish MAAC.

Much like paragraph 1 of the Spanish MAAC, other portions of the document expressly declare that the parties agreed to resolve their disputes via binding arbitration.  One part of the introductory paragraph provides:  "I understand that by signing this [MAAC], both [Western Bagel] and I agree to resolve any differences between us (except as specifically stated below) through the binding arbitration procedures explained within this

_____

process to the extent permitted by applicable law.  Consequently, [Western Bagel] and I may only file claims against the other within our individual capacities, and neither may file a claim against the other as a representative plaintiff or member of any alleged class action lawsuit or legal action, unless contravened by law.  Moreover, unless [Western Bagel] and I otherwise agree in writing, the arbitrator may not consolidate the claims of more than one person and may not otherwise preside over any form of class action lawsuit or legal action."

7

Agreement."  A bullet-point under the introductory paragraph reads:  "[A]ny claim arbitration [*sic*] undertaken by myself or [Western Bagel] as opposed to being litigated through a court or other agency will be mutually binding."  Similarly, paragraph 7(c) provides in pertinent part:  "The arbitrator's decisions regarding the claims will be final and binding between the parties and are enforceable in any court that has jurisdiction thereof."

Other provisions of the Spanish MAAC reflect that the parties intended to participate in binding arbitration.  For instance, paragraph 3 states:  "I understand that by signing this Agreement, [Western Bagel] and I waive any rights to a jury trial for any claims against the other, as previously described in paragraph l."  One of the sentences preceding the signature lines provides:  "I acknowledge that, except as expressly provided within this Agreement, I waive my right to file an adjudicated claim or resolution through a court or jury, and that [Western Bagel] also waives these rights."  (Boldface omitted.)

Furthermore, the following text appears below the signature lines in the Spanish MAAC:  "DISCLAIMER:  The translation of this document is for informational purposes only. This is a translation originally drawn up in English.  Accordingly, it is understood that all legal rights, responsibilities and/or obligations are governed by the original English version of this document.  Furthermore, we reserve the right to correct any errors in this document.  This document is available in Spanish for your convenience only.  You agree, however, that any ambiguity or issue of interpretation will be resolved solely by the English version of this document."

## 2. The Commencement of the Instant Litigation and Western Bagel's Motion to Compel Arbitration

On July 1, 2019, Calderon filed a class action complaint against Western Bagel, alleging four causes of action: (1) failure to provide meal breaks, (2) failure to provide rest periods, (3) waiting time penalties, and (4) unfair business practices. At bottom, Calderon avers that Western Bagel "did not have any policy for mandatory meal breaks and rest periods" until "in or around 2016," and "even after the policy change," Western Bagel failed to provide legally compliant meal and rest breaks. Calderon seeks to represent two proposed classes: (1) "All individuals employed and formerly employed by [Western Bagel] in California in Retail Store position [*sic*] during the appropriate time period whom [Western Bagel] failed to authorize and permit the legally requisite meal periods"; and (2) "All individuals employed and formerly employed by [Western Bagel] in California in Retail Store position [*sic*] during the appropriate time period whom [Western Bagel] failed to authorize and permit the legally requisite rest periods . . . ."

Western Bagel filed the instant motion to compel arbitration, asserting that the Spanish MAAC requires Calderon to arbitrate all disputes arising out of his employment with Western Bagel, and that Calderon's class claims should be dismissed.

Calderon opposed the motion to compel, arguing that (1) there was no valid arbitration agreement because (a) Calderon did not sign the English MAAC, (b) the Spanish MAAC provides " '[t]he translation [was] for informational purposes only[,]' " and (c) the Spanish MAAC states that "the neutral arbitration would not be binding"; and (2) the MAAC is unconscionable.

9

In its reply, Western Bagel contended Calderon signed the Spanish MAAC, the English MAAC "was merely included in [Western Bagel's] Motion as a complete version of the MAAC . . . for the court and [Calderon's] reference," "[Western Bagel's] Motion makes no representation that [the English MAAC] is the binding agreement between" Calderon and Western Bagel, and Calderon failed to establish the MAAC is unconscionable.

During the hearing on the motion, the trial court stated that it was inclined to order Calderon to submit his claims to nonbinding arbitration. The trial court then ordered the parties to provide supplemental briefing on the following issues: (1) whether the MAAC required the parties to participate in binding or nonbinding arbitration; and (2) how the court should proceed in the event it determined the parties could proceed to only nonbinding arbitration.

In his supplemental brief, Calderon claimed that "a non-binding arbitraion [*sic*] of his individual claims will likely be a futile exercise . . . ." Western Bagel contended in its supplemental brief that its third-party translator mistakenly inserted the term "non-binding arbitration" into the Spanish MAAC, and that the trial court should disregard that term.

The trial court issued an order granting Western Bagel's motion "on a non-binding basis." It found that Calderon "agreed to non-binding arbitration of his claims, and that non-binding arbitration is required before the case can be further litigated." The lower court remarked "the two versions of the [MAAC] are markedly different" because "[t]he unsigned English version purports to require binding arbitration, while the Spanish version states that arbitration will be *non*-binding." Because the

10

court found that "the language purporting to create a binding, versus non-binding, agreement to arbitrate is ambiguous at best," it "construe[d] the language against Western Bagel as the drafter," thereby concluding that Western Bagel had "not established that a binding agreement to arbitrate exists."

The trial court also found that "the FAA applies to the arbitration agreement" because Western Bagel demonstrated that it "regularly engage[d] in interstate commerce" and the MAAC provides that the FAA governs the interpretation and enforcement of the agreement. It further concluded that the MAAC was not unconscionable because, although Calderon established that "procedural unconscionability is present in the agreement," he had "not demonstrated that the agreement is substantively unconscionable." Because the court found that Calderon "agreed only to non-binding arbitration," the court stated that it "need not reach the arbitrability of the class claims," and denied Western Bagel's request to dismiss the class claims.[6]

Western Bagel appealed the trial court's order compelling nonbinding arbitration.

---

[6] Although Western Bagel insists that Calderon agreed to binding arbitration, Western Bagel does not ask us to determine whether Calderon may arbitrate his class claims. Accordingly, we do not reach that issue. (See *Pedlow v. Superior Court* (1980) 112 Cal.App.3d 368, 370, 372 (*Pedlow*) [noting that a writ petitioner bears the burden of demonstrating the trial court erred]; *Butte View Farms v. Agricultural Labor Relations Bd.* (1979) 95 Cal.App.3d 961, 966, fn. 1 [same].)

## DISCUSSION

## A. Appealability

Code of Civil Procedure section 1294, subdivision (a) provides: "An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration." Calderon maintains that Western Bagel's challenge to the trial court's order compelling nonbinding arbitration is not an appealable order under this provision.

We need not resolve whether the trial court's order is appealable because Western Bagel persuasively argues that we should exercise our discretion to treat its appeal as a writ petition. (See *Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 767–768 (*Phillips*) [" '[I]mmediate review of an order granting a motion to compel arbitration may be obtained by a petition for writ of mandate.' [Citations.] . . . . In the interest of justice and to avoid unnecessary delay, we will treat the appeal as a petition for a writ of mandate and proceed on that basis."]; see also *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1121–1123 [the panel declined to resolve whether a particular order was appealable because the court exercised its discretion to treat the appeal as a writ petition]; *Evilsizor v. Sweeney* (2014) 230 Cal.App.4th 1304, 1310 [same].)

Courts have "considered five factors in [considering whether it is] appropriate to treat [an] appeal as a petition for a writ: Whether '(1) requiring the parties to wait for a final judgment might lead to unnecessary trial proceedings; (2) the briefs and record included, in substance, the necessary elements for a proceeding for a writ of mandate; (3) there was no indication the trial court would appear as a party in a writ proceeding; (4) the appealability of the order was not clear; and (5) the parties

12

urged the court to decide the issues rather than dismiss the appeal.' [Citations.]" (See *Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 465 (*Curtis*).) Although Calderon urges us not to decide the issues raised in this appeal, the remaining factors weigh in favor of treating this appeal as a petition for writ of mandate.

First, if we required Western Bagel to wait for final judgment, then Western Bagel would be forced to participate in arbitration on a nonbinding basis and Calderon could litigate his claims in the trial court thereafter. Yet, if Western Bagel is correct that the MAAC obligates Calderon to submit his claims to binding arbitration, then those postarbitration trial court proceedings will have been unnecessary and improper.[7]

The parties have fully briefed the merits of Western Bagel's challenge to the trial court's ruling, and an appeal of a final judgment would not be an adequate remedy for Western Bagel because the order compelling nonbinding arbitration may lead to unnecessary and improper trial proceedings. (See *Curtis*, *supra*, 62 Cal.App.5th at p. 466 [indicating that the first and second discretionary factors can overlap].)

---

[7] We note that we summarily denied a petition for writ of mandate that Western Bagel had filed to challenge the lower court's order. Notwithstanding our denial of Western Bagel's prior petition, we are permitted to grant Western Bagel writ relief. (See *Golden Door Properties, LLC v. Superior Court* (2020) 53 Cal.App.5th 733, 788 ["[A] summary denial of a petition for a writ of mandate is not a merits adjudication and 'does not establish law of the case . . . .' [Citation.]"].)

13

The parties do not claim that the trial court would appear if Western Bagel had filed a writ petition, and it is not apparent that the trial court would be inclined to do so.

The text of Code of Civil Procedure section 1294, subdivision (a) does not specify whether an order compelling nonbinding arbitration may constitute an appealable order if it amounts to a denial of a request to compel binding arbitration. (See Code Civ. Proc., § 1294, subd. (a).) Further, neither party has identified a decision that has addressed this issue, and our research has not revealed any either. Additionally, we observe that even though Western Bagel asked us in its opening brief to construe its appeal as a writ petition, Calderon has not identified any reason why we should decline to exercise our discretion to do so.

For these reasons, we elect to reach the merits of Western Bagel's challenge to the trial court's ruling by treating the appeal as a writ petition.

It does not follow, as Calderon contends in his respondent's brief, that we must address Calderon's contention the trial court erred in finding implicitly that he entered into an enforceable arbitration contract. In his respondent's brief, Calderon purports to level a "counter writ petition" seeking "an order to proceed without arbitration, because the parties never entered into any arbitration contract due to the disclaimer in the Spanish MAAC." Calderon cannot seek writ relief in his response to Western Bagel's opening brief, but instead should have filed a cross-petition. (See *County of Sonoma v. Superior Court* (2010) 190 Cal.App.4th 1312, 1324–1325, fn. 9 ["A real party in interest may not obtain review of adverse trial court determinations by way of response to another party's writ petition."].) Indeed,

14

Calderon does not cite any authority establishing that he may request writ relief in his respondent's brief. (Cf. *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [" 'We are not bound to develop appellants' arguments for them.' "].) Further, there is no indication in the record that Calderon filed a separate notice of appeal that we could construe as a writ petition. (See *Phillips*, *supra*, 209 Cal.App.4th at pp. 767–768; cf. *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1090–1091, fn. 4 [disregarding a respondent's challenge to a ruling that his claims were subject to arbitration because the respondent did not file a cross-appeal].) Thus, Calderon's challenge to the trial court's ruling is not properly before us.

## B.     Standard of Review

"In ruling on a motion to compel arbitration, the trial court shall order parties to arbitrate 'if it determines that an agreement to arbitrate the controversy exists . . . .' [Citation.] '[T]he party seeking arbitration bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving by a preponderance of the evidence any defense . . . .' [Citation.] In evaluating an order denying a motion to compel arbitration, ' " 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law.' " ' [Citation.] If the trial court resolved contested facts, we 'review the court's factual determinations for substantial evidence.' [Citation.]" (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1106 (*Nielsen Contracting, Inc.*).)

15

The FAA "provides that a contractual arbitration provision 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[,]' " and it also ' "declare[s] a national policy favoring arbitration" of claims that parties contract to settle in that manner.' [Citation.]" (*Nielsen Contracting, Inc.*, *supra*, 22 Cal.App.5th at p. 1106.) " '[E]ven when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles. . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . .' " ' " (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 177.)

"The FAA precludes states from 'requir[ing] a procedure that interferes with fundamental attributes of arbitration, "even if it is desirable for unrelated reasons." ' [Citation.] This rule 'applies equally to requirements imposed by statute or judicial rule.' [Citation.]" (*Prima Donna Development Corp. v. Wells Fargo Bank, N.A.* (2019) 42 Cal.App.5th 22, 36 (*Prima Donna Development Corp.*).) FAA preemption is a matter of federal law that we review de novo. (See *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 716–717 ["[Appellant] argues[ ] the FAA has preempted [a] provision of California law and the court was required to enforce the arbitration provision. As the parties agree, this issue presents a question of law subject to de novo review by the appellate court."]; cf. *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1468–1469 ["Whether a state cause of action is preempted by section 301 [of the Labor Management Relations Act] is a question of federal law we review de novo."].)

**C. The FAA Preempts Applying the Contra Proferentum Rule Here and Requires Us to Construe Any Ambiguity in Favor of Binding Arbitration[8]**

The trial court seems to have: (1) treated the English and Spanish MAACs as if they collectively constitute one document, (2) found that the inclusion of the term "non-binding arbitration" in the Spanish MAAC created an ambiguity regarding whether Calderon agreed to submit his claims to binding or nonbinding arbitration, (3) and employed the interpretive doctrine of contra proferentem to "construe the language against Western Bagel as the drafter" and conclude that Calderon "agreed only to non-binding arbitration . . . ."[9]

As a preliminary matter, we note the trial court did not explain clearly why it apparently considered the English and Spanish MAACs to be one document. Further, it is not altogether clear that an ambiguity exists, given that the MAAC states repeatedly that the parties agreed to binding arbitration and that they waived their right to try their claims in a court or jury trial, and that paragraph 10 of the Spanish MAAC (which is operative

---

[8] Neither party challenges the trial court's ruling that the FAA governs the parties' arbitration agreement. (See *Pedlow*, *supra*, 112 Cal.App.3d at p. 370 ["A judgment or order of the lower court is presumed correct."].)

[9] Although the trial court stated at one point that "the language purporting to create a binding, versus non-binding, agreement to arbitrate is ambiguous *at best*," the court later indicated that it did, in fact, find an ambiguity when the court declared: "[G]iven the ambiguity discussed above, the ambiguity must be construed against [Western Bagel] as the drafter of the agreement." (Italics added.)

only if part of the agreement has been declared illegal) is the only provision referencing nonbinding arbitration.  (See Factual and Procedural Background, part 1, *ante*; see also *Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 391 [" 'An ambiguity arises when language is *reasonably* susceptible of more than one application to material facts[,]' " italics added].)

In addition, although the trial court acknowledged Western Bagel's claim that a third-party translator mistakenly had inserted the phrase "non-binding arbitration" into the Spanish MAAC, it does not appear the court considered whether that assertion undermines the court's premise that Western Bagel was the drafter against whom an ambiguity may be construed under the contra proferentem doctrine.

Even assuming arguendo the trial court did not err in: (1) considering the two versions of the MAAC to be one agreement; (2) finding an ambiguity concerning whether the MAAC calls for binding or nonbinding arbitration; and (3) finding that Western Bagel was the drafter for the purposes of the contra proferentem doctrine, the United States Supreme Court's decision in *Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407 (*Lamps Plus, Inc.*), establishes the trial court erred in utilizing that doctrine to resolve any such ambiguity.

In *Lamps Plus, Inc.*, the Ninth Circuit Court of Appeals found under California contract law that an arbitration agreement governed by the FAA "was ambiguous on the availability of class arbitration" to an employee bringing class claims against his employer for compromising confidential employee tax information.  (See *Lamps Plus, Inc.*, *supra*, 139 S.Ct. at pp. 1412–1414.)  The intermediate appellate court relied upon contra proferetem to construe the ambiguity against

18

the employer, thereby concluding the employee could proceed to class arbitration.  (See *id.* at p. 1413.)  The Supreme Court reversed that decision, and remanded the matter to the Ninth Circuit for further proceedings, on the ground that the FAA barred the circuit court from deploying contra proferentem to find that the agreement permitted class arbitration.  (See *id.* at pp. 1417–1419.)

The high court first followed its "normal practice" to "defer to the Ninth Circuit's interpretation and application of state law and thus accept that the agreement should be regarded as ambiguous."  (See *Lamps Plus, Inc.*, *supra*, 139 S.Ct. at p. 1415.)  It then observed "[a]lthough courts may ordinarily [construe arbitration agreements] by relying on state contract principles, [citation], state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA, [citation]" such as " 'by "interfer[ing] with fundamental attributes of arbitration." ' [Citation.]"  (See *id.* at pp. 1415, 1418.)

The Supreme Court further stated that an "individualized form of arbitration [is] envisioned by the FAA," wherein " 'parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution, lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.' [Citation.]"  (See *Lamps Plus, Inc.*, *supra*, 139 S.Ct. at p. 1416.)  In contrast, "[c]lass arbitration lacks those benefits" because "[i]t 'sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.' [Citation.]"  (See *ibid.*)  "Because of these 'crucial differences' between

19

individual and class arbitration, . . . . courts may not infer consent to participate in class arbitration absent an affirmative 'contractual basis for concluding that the party *agreed* to do so.' [Citation.]" (See *ibid.*) Furthermore, "[l]ike silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration' " by " 'resolv[ing their] disputes through classwide arbitration.' [Citation.]" (See *ibid.*)

The Supreme Court then noted, "[u]nlike contract rules that help to interpret the meaning of a term, and thereby uncover the intent of the parties, *contra proferentem* is by definition triggered only after a court determines that it *cannot* discern the intent of the parties" using "ordinary methods of [contract] interpretation." (*Lamps Plus, Inc.*, *supra*, 139 S.Ct. at p. 1417.) Because the doctrine "resolves the ambiguity against the drafter based on public policy factors, primarily equitable considerations about the parties' relative bargaining strength," " 'it can scarcely be said to be designed to ascertain the meanings attached by the parties.' [Citation.]" (*Ibid.*) The Supreme Court further reasoned that, because applying this "state contract principle[ ]" to an ambiguity concerning whether the parties agreed to class arbitration would " 'reshape traditional individualized arbitration . . . . without the parties' consent[,]' " contra proferentem " 'interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.' [Citation.]" (See *id.* at p. 1418.)

Accordingly, the *Lamps Plus, Inc.* court held that "[t]he doctrine of *contra proferentem* cannot substitute for the requisite affirmative 'contractual basis for concluding that the part[ies] *agreed* to [class arbitration].' [Citation.]" (*Supra*, 139 S.Ct. at

20

p. 1419.)  Upon holding the FAA bars a court from relying on this interpretive doctrine to ascertain whether an agreement authorizes classwide arbitration, the high court stated that "the FAA provides the default rule for resolving ambiguity here"—i.e., "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."[10]  (See *id.* at pp. 1418–1419.)

*Lamps Plus, Inc.* controls here.  Just as "individual arbitration" is a " 'fundamental attribute[ ] of arbitration' " "envisioned by the FAA" (i.e., because of, inter alia, its "lower costs, greater efficiency and speed") (see *Lamps Plus, Inc.*, *supra*, 139 S.Ct. at pp. 1416, 1418), so too is "the expectation 'that the arbitrator's decision will be both binding and final[,]' " given that this characteristic safeguards " 'arbitral efficiency' " too.  (See *Prima Donna Development Corp.*, *supra*, 42 Cal.App.5th at p. 44; cf. *ibid.* ["The limited nature of judicial review of arbitration agreements stems from the expectation 'that the arbitrator's decision will be both binding and final.'  [Citation.]  The FAA precludes courts from 'impos[ing] unconscionability rules [regarding limited judicial review] that interfere with arbitral efficiency.'  [Citation.]"].)  Consequently, the FAA precluded the trial court here from inferring from a purported ambiguous

---

**10**  Although the *Lamps Plus, Inc.* court did not state explicitly that the FAA's default rule precluded the employee from arbitrating his class claims, the high court tacitly reached that conclusion.  The Supreme Court stated that the form of arbitration "envisioned by the FAA" is " 'traditional individualized arbitration[,]' " and the high court reversed the circuit court's judgment, which would have been unnecessary if the type of "arbitration" subject to the FAA's default rule encompassed the classwide resolution of claims.  (See *Lamps Plus, Inc.*, *supra*, 139 S.Ct. at pp. 1412, 1418–1419.)

21

agreement that Calderon and Western Bagel consented to nonbinding arbitration. Consistent with *Lamps Plus, Inc.*, the trial court could not apply "[t]he doctrine of *contra proferentem* [as a] substitute for the requisite affirmative 'contractual basis for concluding' " the parties had agreed to forgo "the central benefits of arbitration itself" by submitting their disputes to nonbinding arbitration. (See *Lamps Plus, Inc.*, at pp. 1417, 1419.) Applying the FAA's default rule in *Lamps Plus, Inc.*, we resolve any alleged ambiguity as to whether the arbitration would be binding in favor of the form of arbitration contemplated by the FAA—binding arbitration. (See *id.* at pp. 1418–1419; *Prima Donna Development Corp.*, at p. 44.)

Calderon's arguments to the contrary are unavailing. Calderon claims that *Lamps Plus, Inc.* is distinguishable because the agreement in that case " 'include[d] no express mention of class proceedings[,]' " (see *Lamps Plus*, *supra*, 139 S.Ct. at p. 1413), whereas the two versions of the MAAC use the terms "binding arbitration" and "non-binding arbitration." This distinction is immaterial because as just noted, "[n]either silence *nor ambiguity* provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself." (See *Lamps Plus, Inc.*, at p. 1417, italics added; see also *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1244 ["An ambiguity results 'when "there is contradictory or necessarily inconsistent language in different portions of the instrument . . . ." ' [Citations.]"].)

Calderon also claims that the trial court's reliance on contra proferentem in the instant case is consistent with *Lamps Plus, Inc.* because the lower court's ruling ensured that the

22

parties would not be required to resolve their claims via binding arbitration in the absence of evidence of their consent to do so. He further points out that *Lamps Plus, Inc.* acknowledged that courts " 'presume that parties have not authorized arbitrators to resolve certain "gateway" questions, such as *whether the parties have a valid arbitration agreement at all* or whether a concededly binding arbitration clause applies to a certain type of controversy." ' "  (Quoting *Lamps Plus, Inc.*, *supra*, 139 S.Ct. at pp. 1416–1417, italics added by Calderon.)

Calderon overlooks the fact that the type of consent that *Lamps Plus, Inc.* held cannot be inferred in the absence of "an affirmative 'contractual basis' " is an agreement "to undermine the central benefits of arbitration itself."  (See *Lamps Plus, Inc.*, 139 S.Ct. at pp. 1416–1417.)  As we explained above, binding arbitration is a fundamental attribute of arbitration that secures the benefits envisaged by the FAA.  *Lamps Plus, Inc.* did not hold that a court cannot compel the parties to submit to binding arbitration in the absence of an unambiguous expression of their consent to do so; in fact, the high court stated that "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."  (See *id.* at p. 1418.)

In addition, *Lamps Plus, Inc.*'s discussion of "gateway" questions does not pertain to the instant matter because the trial court did not utilize contra proferentem to ascertain whether an arbitrator may decide questions reserved ordinarily to courts (e.g., whether a valid arbitration contract was formed).  Rather, the trial court invoked this canon to determine whether an award

23

issued by the arbitrator would bind the parties.[11] *Lamps Plus, Inc.* establishes that the FAA precludes such an approach.

We also note that the trial court cited Division Six's opinion in *Juarez v. Wash Depot Holdings, Inc.* (2018) 24 Cal.App.5th 1197, to support its interpretation of the parties' agreement. In *Juarez*, an employee signed acknowledgment forms indicating that he received the English and Spanish versions of an employee handbook; both versions of the handbook included an illegal waiver of the employee's right to bring a representative claim under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.). (See *Juarez*, at pp. 1200–1202.) "The English-language version of the handbook . . . provide[d] that the PAGA waiver [was] severable from the arbitration agreement should a court find the waiver [was] unenforceable. In contrast, the Spanish-language version of the

---

[11] Although Western Bagel contends that an arbitrator should have decided whether the parties agreed to binding or nonbinding arbitration, it is unnecessary to resolve that question because our ruling grants Western Bagel the relief it seeks: An order "revers[ing] the trial court's order denying its motion to compel binding arbitration and remand[ing] with directions to the trial court to enter an order directing binding arbitration under the terms of the arbitration agreement." (Cf. *Costa Serena Owners Coalition v. Costa Serena Architectural Com.* (2009) 175 Cal.App.4th 1175, 1205 ["Our disposition of the . . . appeal from the judgment in this case renders moot [the appellant's] appeal from the trial court's denial of his motion to vacate the judgment. The judgment that [the appellant] wishes to have vacated is no longer in effect. Therefore, neither the trial court nor this court can grant him the relief that he requests in his motion to vacate, or in his appeal from the denial of that motion."].)

24

handbook provide[d] that the PAGA waiver [was] *not* severable from the arbitration agreement." (*Id.* at p. 1200.) The Court of Appeal found that this discrepancy created an ambiguity, and construed the ambiguity against the drafter (the employer) such that the Spanish version of the severability clause governed. (See *id.* at pp. 1199, 1203.) As a consequence, the court concluded the invalid PAGA waiver rendered the entire arbitration agreement unenforceable. (See *ibid.*)

*Juarez* does not undermine our conclusion that Calderon must submit his claims to binding arbitration. There is no indication in the *Juarez* decision that the FAA applied to the contract at issue there. (See, e.g., *Juarez*, *supra*, 24 Cal.App.5th at p. 1202 [instead stating that "general principles of California contract law" governed the appellate court's review of the trial court's decision].) In any event, we are bound by the *Lamps Plus, Inc.* decision's interpretation of the FAA. (*Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995, 1006 ["[D]ecisions of [the] U.S. Supreme Court on questions of federal law 'are binding on all state courts under the supremacy clause of the United States Constitution.' "], quoting *People v. Fletcher* (1996) 13 Cal.4th 451, 469, fn. 6.)

In sum, the trial court erred in applying contra proferentem to determine whether the parties agreed to binding or nonbinding arbitration. Furthermore, the FAA's default rule requires us to construe any ambiguity on this point in favor of binding arbitration. Because this analysis is dispositive of Western Bagel's challenge to the trial court's order, we do not reach the parties' other issues.

## DISPOSITION

The appeal from the order compelling nonbinding arbitration is treated as a petition for writ of mandate. The petition is granted. The trial court is directed to (1) vacate its order compelling nonbinding arbitration, and (2) enter a new order compelling binding arbitration under the terms of the parties' arbitration agreement. Each side is to bear its own costs in this review proceeding.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

26

Filed 7/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WESTERN BAGEL COMPANY, INC., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> JOSE CALDERON, <br><br> Real Party in Interest. | B305625 <br><br> (Los Angeles County Super. Ct. No. 19STCV22699) <br><br> CERTIFICATION AND ORDER FOR PUBLICATION <br><br> [NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed on June 24, 2021, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.